## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CHERYL GLAZIER, *et al.*,

               Plaintiffs,                  Case No. 20-cv-12540
                                                  Hon. Matthew F. Leitman

v.

TRUE NORTH ENERGY, LLC, *et al.*,

               Defendants.

_____/

### ORDER (1) GRANTING PLAINTIFFS' MOTION TO FILE A SUR-REPLY (ECF No. 13) AND (2) DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION (ECF No. 7)

In this action, Plaintiffs Cheryl Glazier, Randi Wright, Amanda Cape, and Keely Robare allege that their former employers, Defendants True North Energy, LLC ("TNE"), True North Management, LLC ("TNM") (collectively with TNE, "True North"), and Schmuckal Oil Company, failed to pay them overtime in violation of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 *et seq*. (*See* Am. Compl., ECF No. 3.)   True North has now moved to compel the Plaintiffs to individually arbitrate their disputes based on allegedly-binding arbitration agreements that True North says each Plaintiff executed. (*See* Mot. to Dismiss, ECF No. 7.)  True North further contends that the Court should dismiss the claims against TNE because the Plaintiffs never worked for TNE. (*See id*.)   For the reasons explained below, True North's motion is **DENIED**.

1

**I**

**A**

In 2019, Plaintiffs were store managers at convenience stores owned and operated by Schmuckal. (*See* Am. Compl. at ¶¶ 14, 18, ECF No. 3, PageID.27.) Schmuckal then sold those stores to TNE. (*See id.* at ¶12, PageID.26.)

According to True North, TNE did not assume the employment of Schmuckal's employees as part of its purchase of Schmuckal's stores. Instead, True North says that after TNE purchased the stores from Schmuckal, one of TNE's affiliates named TNM hired the Plaintiffs directly. (*See* Affidavit of Jennifer Rhodes, General Manager of Human Resources at TNM, at ¶¶ 4-7, ECF No. 7-1, PageID.85-86.) At that time, TNM provided Plaintiffs a copy of its Managers and Corporate Employee Handbook – Michigan (the "Handbook"). (*See* Handbook, ECF No. 11-3.)   The first page of the Handbook contained a "disclaimer" that said that the Handbook was not "an agreement, contract of employment, express or implied, or a promise of treatment in any particular manner in any given situation, *nor d[id] it confer any contractual rights whatsoever*." (*Id.*, PageID.158; emphasis added.)   In addition, the disclaimer provided that the Handbook "state[d] only general Company guidelines.  The Company may, at any time, in its sole discretion, modify or vary from anything stated in the [Handbook], with or without notice…." (*Id.*)

One of the "guidelines" discussed in the Handbook was TNM's arbitration policy. (*See id.*, PageID.170-171.)  It provided as follows:

### 1-11. Binding Arbitration and Waiver of Jury Trial

True North and employee agree that, excluding claims which must be resolved in other forums (such as adjudications regarding unfair labor proceedings before the National Labor Relations Board), employee will resolve any and all disputes or claims which relate to employment at True North, or which in any way involve True North, its members, their subsidiaries and affiliates, and/or its other employees, by binding arbitration before a neutral arbitrator selected by the parties, or in the event of a disagreement, by a random draw after each party submits three (3) names of potential arbitrators. Employee and True North agree that any claims relating to other employees must be heard in separate proceedings from the claims advanced by employee, and therefore, employee hereby waives and releases any right to pursue any claims for concerted relief including but not limited to class actions. Employee waives any rights to commence or be a party to any group or collective action claim in arbitration or any other forum. Employee and True North agree that any claim by or against employee or True North shall be heard without consolidation such claim without consolidation of any other employee's claim(s).

Employee acknowledges that this is an agreement as to choice of forum and is not intended to extend any applicable statute of limitations. Employee and True North agree that any demand for arbitration will be timely only if made within the time in which an administrative charge or complaint could have been filed with the administrative agency or court. This agreement to arbitrate may be specifically enforced, meaning either party may apply to any court with jurisdiction to compel arbitration and/or dismiss any action filed in contravention of this agreement. Irrespective of the outcome, or who is the

3

prevailing party, the parties shall split the costs of arbitration equally. The parties will abide by and comply with the arbitration decision and agree that a judgment of any court having jurisdiction may be entered on the award. Company and employee agree that the Federal Arbitration Act governs the enforceability of any and all arbitration issues. The arbitrator shall determine whether an issue is subject to arbitration as well as any procedural questions. The award of the arbitrator may be entered by any court having jurisdiction thereof.

If any claim is found not subject to required arbitration, it must be brought in the federal or state court closest to the site at which the employee was last employed at True North. In this regard, employee voluntarily and knowingly waives the following rights: (a) the right to submit any claims to a jury and hereby waives all rights to a jury trial; and (b) the right to file any claim in Small Claims Court irrespective of the amount of the claim. If any provision of this agreement is found to be unenforceable or invalid, employee and True North agree that the remainder of the terms shall remain in full force and effect. This agreement shall be binding upon and inure to the benefit of any successor and assignee of True North and as to the employee's heirs, executors and administrators. Employee understands that he/she will not be considered for employment or continued employment by True North without agreement to these provisions.

(*Id.*) TNM says that it required all of its "existing employees and new applicants" – including Plaintiffs – "to consent" to this arbitration provision "[a]s a condition of employment." (Rhodes Aff. at ¶8, ECF No. 7-1, PageID.86.)

Finally, TNM required the Plaintiffs to acknowledge their receipt of the Handbook by electronically signing an acknowledgment in TNM's online employee information system (the "Acknowledgment"). (*See id.* at ¶9, PageID.88.) The

4

Acknowledgment provided, in relevant part, that "[t]he Employee handbook is an important document intended to help you become acquainted with [TNM].  The handbook is intended to provide guidelines and general descriptions only; it is not the final word in all cases.  Individual circumstances may call for individual attention." (Acknowledgment, ECF No. 7-1, PageID.100.)  The Acknowledgment further stated that "[t]he contents of this handbook may be changed at any time, with or without notice, in an individual case or generally, at the sole discretion of management." (*Id.*)  Finally, the Acknowledgment said that "[b]y selecting 'Accept' you are acknowledging that you have read and understand the policies and rules contained within the handbook and will adhere to the guidelines herein." (*Id.*)  The Acknowledgment then listed six "guidelines" in bullet points. (*See id.*)  One of the bullet points was "Binding Arbitration." (*Id.*)  Aside from the two words "Binding Arbitration," the Acknowledgment did not say anything else about any purported agreement to arbitrate. (*See  id.*) Each of the Plaintiffs executed the Acknowledgment. (*See id.*, PageID.100, 102, 104, 106.)

**B**

Plaintiffs filed this action against TNE, TNM, and Schmuckal on September 16, 2020. (*See* Compl., ECF No. 1; Am. Compl., ECF No. 3.)  Plaintiffs allege that even though they were not exempt from the overtime provisions of the FLSA, and even though they were "often required to work over sixty hours per week," the

Defendants nonetheless refused to pay them any "overtime compensation." (Am. Compl. at ¶¶ 20, 27, 29, ECF No. 3, PageID.27-29.)   In this collective action, Plaintiffs seek to represent "all" interested "current and former employees of Defendants who worked as managers at any time from three (3) years preceding the filing of this lawsuit." (*Id*. at ¶30, PageID.29.)

True North moved to dismiss Plaintiffs' action on January 4, 2021. (*See* Mot. to Dismiss, ECF No. 13.)   True North argues that Plaintiffs cannot proceed in this forum because they agreed to individually arbitrate their disputes when they began working for TNM. (*See id.*)   True North also argues that TNE is not a proper Defendant because Plaintiffs never worked for TNE. (*See id.*)   The Court held a video hearing on True North's motion on April 15, 2021.[1] (*See* Notice of Hearing, ECF No. 17.)

## II

### A

Under the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, "[a] written agreement to arbitrate disputes arising out of a transaction in interstate commerce shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Hergenreder v. Bickford*

---

[1] On January 4, 2021, Plaintiffs filed a motion for leave to file a sur-reply. (*See* Mot., ECF No. 13.)   That motion is **GRANTED**.

*Senior Living Group*, *LLC*, 656 F.3d 411, 416 (6th Cir. 2011) (quoting 9 U.S.C. §

2). The FAA "manifest[s] a liberal federal policy favoring arbitration agreements"

*id.* (internal quotation marks omitted), and it "was designed to override judicial

reluctance to enforce arbitration agreements, to relieve court congestion, and to

provide parties with a speedier and less costly alternative to litigation." *Stout v. J.D.*

*Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Pursuant to the FAA, any "doubt

regarding the applicability of an arbitration clause should be resolved in favor of

arbitration." *Id.* at 715. However, "[b]efore compelling an unwilling party to

arbitrate, [a] court must engage in a limited review to determine whether the dispute

is arbitrable; meaning that a valid agreement to arbitrate exists between the parties

and that the specific dispute falls within the substantive scope of that agreement."

*Hergenreder*, 656 F.3d at 416. "Indeed, [t]he *sine qua non* of the FAA's

applicability to a particular dispute is an agreement to arbitrate the dispute in a

contract which evidences a transaction in interstate commerce." *Floss v. Ryan's*

*Family Steak Houses*, *Inc.*, 211 F.3d 306, 314 (6th Cir. 2000).

"Because arbitration agreements are fundamentally contracts, [courts] review

the enforceability of an arbitration agreement according to the applicable state law

of contract formation" – in this case, the law of Michigan. *Hergenreder*, 656 F.3d at

416. "The elements of a valid contract in Michigan are: (1) parties competent to

contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of

agreement, and (5) mutuality of obligation." *Id.* at 417. (internal quotation marks omitted).  "Whether the parties have mutually agreed to be bound is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id.* (internal quotation marks omitted).  Finally, "[t]he party seeking to enforce a contract has the burden of showing that it exists." *Id.*

<strong>B</strong>

True North has failed to show that a valid, binding arbitration agreement exists between the Plaintiffs and TNM and/or TNE.   First, the arbitration provision in the Handbook does not amount to binding agreement to arbitrate.  As quoted above, the Handbook expressly *disclaimed* the creation of any binding obligations.  It provided that it was not "an agreement, contract of employment, express or implied, or a promise of treatment in any particular manner in any given situation, *nor d[id] it confer any contractual rights whatsoever*." (Handbook, ECF No. 11-3, PageID.158; emphasis added.)  Moreover, the Handbook did not create an enforceable contract because it lacked mutuality of obligation: it did not impose any binding obligations on TNM and/or TNE.  On the contrary, the Handbook provided that TNM "may, at any time, in its sole discretion, modify or vary from anything stated in the [Handbook], with or without notice…." (*Id.*)  This statement made clear that TNM and/or TNE "retain[ed] the right to decide whether or not to perform [a] promised

8

act" described in the Handbook, and it therefore rendered illusory any promise TNM and/or TNE may have made. *Floss* 211 F.3d at 315-16 (holding that employer's promise to arbitrate disputes with employee was illusory, and "lack[ed] a mutuality of obligation," where employer "reserved the right to … choose the nature of its performance" and "alter the applicable rules and procedures without any obligation to notify, much less receive consent from" its employees). *See also id.* at 315 (citing *Trumbull v. Century Marketing Corp.*, 12 F.Supp.2d 683, 686 (N.D. Ohio 1998) for the proposition that an employer's agreement to arbitrate is illusory where it is included in the employer's handbook and employer retained the right to revoke provisions in the handbook). Because the Handbook disclaimed the creation of any contract and lacked mutuality of obligations, Plaintiffs are not bound by the arbitration provision in the Handbook.

The Michigan Supreme Court's decision in *Heurtebise v. Reliable Business Computers, Inc.*, 550 N.W.2d 243 (Mich. 1996), is directly on point. In *Heurtebise*, a plaintiff sued her former employer and claimed that she had been "unlawfully terminated from her job" in violation of the Michigan Civil Rights Act. *Id.* at 245. Her employer then moved to dismiss and compel arbitration based on an arbitration agreement included in the company's handbook. *See id.* The employer argued that the plaintiff had "received" the handbook had "agreed to be bound by [the handbook's] terms and policies." *Id.*

9

The Michigan Supreme Court concluded that the handbook failed to create an enforceable agreement between the plaintiff and her employer.  Like the Handbook here, the handbook in *Heurtebise* included an opening statement that provided that: "It is important to recognize and clarify that the Policies specified herein do not create any employment or personal contract, express or implied, nor is it intended or expected that the information provided in this document will provide sufficient detail to answer all questions which may arise." *Id.* at 247 (emphasis removed).  The handbook in *Heurtebise* also stated that "the company specifically reserves the right, and may make modifications to any or all of the Polies herein, at its sole discretion, and as future conditions may warrant." *Id.*  The Michigan Supreme Court held that these provisions "demonstrate[d] that the defendant did not intend to be bound by any provision contained in the handbook." *Id.*  "Consequently, [that court held] that the handbook [did] not create an enforceable arbitration agreement." *Id.*  The same is true with respect to the Handbook in this case.

Second, the Acknowledgment – both when read alone and in conjunction with the Handbook – did not create a binding agreement to arbitrate between TNM and/or TNE and Plaintiffs. As described above, the Acknowledgment – like the Handbook itself – expressly stated that "[t]he handbook is intended to provide guidelines and general descriptions only; it is not the final word in all cases.  Individual circumstances may call for individual attention." (Acknowledgment, ECF No. 7-1,

PageID.100.)  And the Acknowledgment further highlighted that "*[t]he contents of this handbook may be changed at any time, with or without notice, in an individual case or generally*, at the sole discretion of management." (*Id.*; emphasis added.) Finally, the Acknowledgment did not indicate in any way that TNM and/or TNE intended to be bound by its provisions or those in the Handbook.   It provided only that the *employee* signing the acknowledgment had "read and underst[oo]d the policies and rules in the handbook" and would "adhere to those guidelines." (*Id.*) Thus, for all of the same reasons that the Handbook did not create an enforceable contract, the Acknowledgment also failed to create an enforceable arbitration agreement.

Because neither the Handbook nor the Acknowledgment created an enforceable agreement to arbitrate between Plaintiffs and TNM and/or TNE, Plaintiffs are not obligated to arbitrate their claims.

## C

True North counters that Michigan courts have repeatedly compelled arbitration in circumstances like those presented here. (*See* Reply Br., ECF No. 12, PageID.213-214.)  The Court disagrees.  Each of the cases cited by True North is materially distinguishable.

True North first cites the unpublished Michigan Court of Appeals decision in *McAlindon v. Clio Golf Course, Inc.*, 2001 WL 1404706 (Mich. Ct. App. Nov. 9,

2011).   In *McAlindon*, "[w]hen the plaintiff was hired, she received a copy of defendant's employee handbook," and that handbook contained an arbitration provision. *Id.* at *1.  The plaintiff also "signed a document[] which she claims she was told was to acknowledge that she received a copy of the handbook."  *Id.*  That acknowledgment contained an "arbitration clause" that provided that the employee "agree[d] to arbitrate all claims, disputes, and matters out of or relating to employment or termination of [her] employment." *Id.*  And it included a separate signature line solely for the arbitration provision. *See id.*  The Michigan Court of Appeals held that because "[t]he arbitration provision was made the subject of a specific agreement separate from the terms, conditions and policies of the employee handbook," the employer had "clearly indicate[d] an intent … to be bound by the arbitration provision." *Id.* at *2.  Here, in sharp contrast, while the Acknowledgment referred to the arbitration provision in the Handbook (in a list of bullet-points that also referenced numerous other subjects covered in the Handbook), the Acknowledgment did not contain its own "specific agreement [to arbitrate] *separate* from the terms, conditions and policies of the employee handbook." *Id.* (emphasis added).  Moreover, the Acknowledgment clearly did *not* "indicate an intent … to be bound" on TNM's behalf. *Id.*  Indeed, it did not obligate TNM to abide by *any* of its terms or those in the Handbook.  Instead, it reminded employees that the terms of the Handbook could be "changed at any time, with or without notice, in an individual

case or generally." (Acknowledgment, ECF No. 7-1, PageID.100.) Given these key differences between the Acknowledgment and the form in *McAlindon,* the decision in *McAlindon* does not support True North's argument that Plaintiffs must arbitrate their claims.

Next, True North relies upon the unpublished decision in *Barna v. Daren Restaurants, Inc.*, 2005 WL 3076908 (Mich. Ct. App. Nov. 17, 2015). In *Barna*, the Michigan Court of Appeals affirmed a lower court ruling compelling arbitration. It held that because the plaintiff had "signed an acknowledgment that he received a copy of his employer's dispute resolution procedures," he was required to arbitrate his dispute pursuant to those procedures. *Id.* at *2. Critically, however, the acknowledgment in *Barna* "expressly stated that defendant was equally bound by the terms and conditions" of the dispute resolution procedure at issue. *Id.* The Michigan Court of Appeals deemed that clause important because it "demonstrate[d] that … defendant intended to be bound by the arbitration provision." *Id.* As explained in detail above, the Acknowledgment here included no similar provision that TNM was "equally bound" to arbitrate; rather, it lacked mutuality of obligation. *Barna* therefore does not require Plaintiffs to submit their claims to binding arbitration.

Finally, True North directs the Court to *Hicks v. EPI Printers, Inc.*, 702 N.W.2d 883 (Mich. App. 2005). In *Hicks*, the Michigan Court of Appeals affirmed

a decision compelling a plaintiff to arbitrate where (1) the plaintiff's employee handbook included an arbitration provision and (2) the plaintiff signed an acknowledgment that she received and understood the provisions of the handbook. *See id.* at 886. But *Hicks* is materially distinguishable from this case. Most importantly, the court in *Hicks* held that the handbook at issue, standing alone, did "create[]" a "binding" obligation to arbitrate. *Id.* at 888. It reached this conclusion in large part because the handbook "contain[ed] no express language stating that its terms [were] not intended to create an enforceable agreement." *Id*. at 887. Thus, "[a] fair reding of the [handbook led] to the conclusion that the responsibilities intended [were] contractual." *Id.* Here just the opposite is true. As explained in detail above, the Handbook plainly told the Plaintiffs that it was *not* intended to create an enforceable agreement and that it did not "confer any contractual rights whatsoever." (Handbook, ECF No. 11-3, PageID.158.) Thus, *Hicks* does not compel the conclusion that Plaintiffs must arbitrate their claims.

True North directs the Court to a different portion of the *Hicks* decision in which the court said: "[e]ven if the [handbook] itself [did] not create [a] binding arbitration [agreement] … [the] defendant [would] prevail[] because [the plaintiff] signed the [acknowledgment] form, which included a specific provision for arbitration." *Hicks*, 702 N.W.2d at 888. True North says that this passage supports its argument that even if the Handbook, standing alone, did not create a binding

contract to arbitrate, the Acknowledgment did so.   The Court concludes that Plaintiffs cannot be compelled to arbitrate based upon this passage from *Hicks* for several reasons.

First, the court's discussion of whether the acknowledgment constituted a binding contract appears to be *dicta*. The discussion was not necessary to the decision because, as noted above, the court held that the handbook, standing alone, was sufficient to create a binding contract to arbitrate.   Thus, the discussion does not represent a controlling holding of the court. *See Wright v. Spaulding*, 939 F.3d 695, 700-05 (6th Cir. 2019) (carefully describing how to determine the "holding" of a decision and explaining that the holding is limited to the specific question actually presented by the parties and considered by the court).

Second, the acknowledgment form discussed by the court contained three critical components that did not appear in the Acknowledgment here.  It stated that that the employee understood that "any dispute, matter, or controversy, as set forth in Section 4.07 [of the handbook], *shall* be settled by arbitration." *Id.* (emphasis in original).  It referenced the "mutual [] responsibilities of the parties." *Id.*  And it stated that it constituted an "agreement." *Id.* at 889.  All of this amounted to "plain and forceful language" that the parties intended to enter into a binding arbitration agreement. *Id.*  Indeed, the Michigan Court of Appeals has subsequently confirmed that *Hicks* stands for the proposition that a handbook acknowledgment may

constitute a binding agreement where it mentions the parties' "mutual []
responsibilities," identifies itself as an "agreement," and includes "plain and forceful
language requir[ing] the settlement of all employment disputes by arbitration."
*Robbins v. EPI Printers, Inc.*, 2005 WL 3500872, at *5 (Mich. Ct. App. Dec. 22,
2005).  Since the Acknowledgment contained none of these elements, it cannot
constitute a binding agreement to arbitrate under *Hicks*.

For all of these reasons, the cases cited by True North do not persuade the
Court that an enforceable arbitration agreement exists between TNM and/or TNE
and the Plaintiffs.[2]

## D

Finally, the Court turns to True North's argument that the Court should
dismiss Plaintiffs' claims against TNE because Plaintiffs never worked for TNE.
(*See* Mot. to Dismiss, ECF No. 7, PageID.78-79.)  For all of the reasons discussed
on the record during the motion hearing, the Court **DENIES** this portion of True
North's motion **WITHOUT PREJUDICE**.  Counsel for True North shall meet and
confer with counsel for Plaintiffs in an attempt to determine which True North entity

---

[2] In Plaintiffs' response to True North's motion to compel arbitration, they argue that
True North should be sanctioned for filing its motion to compel. (*See* Resp., ECF
No. 11, PageID.141-143.)  While the Court concludes that the Handbook and the
Acknowledgment do not support the conclusion that Plaintiffs are obligated to
arbitrate their dispute, True North's arguments were not frivolous and do not warrant
the imposition of sanctions.

is the appropriate party in this action.  If, following that meet and confer process, counsel for Plaintiffs believes that it is still appropriate to name both True North entities as Defendants, he shall so inform the Court and the Court will hold a status conference with counsel to discuss next steps with respect to the True North entities.

### III

For all of the reasons stated above, **IT IS HEREBY ORDERED** that True North's motion to compel arbitration (ECF No. 7) is **DENIED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 19, 2021


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 19, 2021, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764
